UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNNY R. MYLES,<br><br>    Plaintiff<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. 2:14-cv-09122-GJS<br><br>**MEMORANDUM AND ORDER** |

## INTRODUCTION

This social security disability case involves a narrow question: Was the administrative law judge (ALJ) permitted to rely on a vocational expert's determination that a person with Myles's RFC could perform a subset of "light work" jobs that are found in the national economy? Because the answer is "yes," the Court affirms the Commissioner's determination that Myles is not entitled to disability benefits.

## PROCEDURAL HISTORY

On June 20, 2012, Myles applied for supplemental security income disability benefits, alleging that he had been disabled since October 30, 2010. [Admin. Rec. ("AR") 115-124.] The Commissioner denied the claim by initial determination on

December 21, 2012. [AR 78-82.] A few months later, Myles sought a hearing before an ALJ, which he received on April 2, 2013. [AR 43-66, 83-85.] On May 21, 2013, the ALJ denied Myles's claim for benefits. [AR 9-24.] Myles appealed to the Appeals Council, which declined review. [AR 1-6.] Accordingly, the ALJ's decision became final on September 26, 2014, and Myles filed this action on November 25, 2014. *See* 42 U.S.C. § 405(h); [Dkt. 1.]

## BACKGROUND

### I. Administrative Decision Under Review

Applying the five-step sequential evaluation process, the ALJ found that Myles was not disabled. *See* 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).[1] Because only Step 5 is at issue here, the Court only summarizes the findings relating to the ALJ's determination on Step 5.

Relevant here, the ALJ determined that Myles retains the residual functional capacity ("RFC") for a "restricted range of light work[.]" [AR 19.] More specifically, after consideration of the medical evidence, the ALJ concluded that Myles could:

> lift and/or carry twenty pounds occasionally and ten
> pounds frequently, **stand and/or walk up to four hours**

---

[1] To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows: (1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two; (2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three; (3) Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four; (4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five; (5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled. 20 C.F.R. §§ 404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

1         **in an eight-hour workday**, and sit up to six hours in an
2         eight-hour workday, with no more than occasional
3         pushing and/or pulling with the left lower extremity.

[AR 15 (emphasis added).] The ALJ also found that Myles had the following nonexertional limitations:

        [N]o more than occasional climbing ramps or stairs; no
        climbing ladders, ropes, or scaffolds; no more than
        occasional kneeling or crawling; and no more than
        frequent balancing, stopping, or crouching.

[*Id.*] Based on the RFC determination, the ALJ concluded that Myles was "unable to perform any past relevant work" as an arc-welder, structural-steel worker, or painter. [AR 19.]

The ALJ proceeded to make findings related to whether Myles could perform other jobs existing in the national economy (*i.e.*, she performed the step 5 inquiry). She found that Myles was 53 years old when the application was filed, has at least a high school education, and is able to communicate in English. [*Id.*] Determining that Myles "cannot perform substantially all of the exertional demands of work at a given level of exertion," the ALJ began her step 5 analysis by explaining that "the medical-vocational rules[2] are used as a framework for decisionmaking unless there is a rule that directs a conclusion of 'disabled' without considering the additional exertional and/or nonexertional limitations." [AR 20.] Because the Grid directed a conclusion of "non-disabled" if Myles could perform the full range of light work exertional activity, the ALJ considered whether Myles's additional limitations rendered him disabled. [*Id.*]

---

[2] The Court will sometimes refer to the Medical-Vocational Rules under 20 C.F.R. Part 404, Subpart P, Appendix 2 as the Grid.

The ALJ relied on the testimony of a vocational expert, Lynne Tracy. [AR 20-21.] During the hearing, Tracy identified two "occupations in the light level" that a person with Myles's limitations (*i.e.*, with his age, education, work experience, and residual functional capacity) could perform, even though the Department of Labor classified these positions as constituting light, unskilled work: bench assembler (DOT code 706.684-022, light, unskilled, SVP: 2) and cashier II (DOT code 211.462-010, light, unskilled, SVP: 2.) [AR 60-61.] She explained that, because many of these positions permitted use of a stool, Myles's limitation—standing and walking for at most four (rather than six) hours a day—only brought his RFC below a *subset* of the bench assembler or cashier II positions. [AR 61-62.] Accounting for the job requirement that a stool be available, Tracy concluded that there exist approximately 4,000 locally and 150,000 nationally available bench assembly jobs, and approximately 4,000 locally and 500,000 nationally available cashier II jobs. [*Id.*] She further explained that the Department of Labor's classification of these positions as requiring light work was broad and based on the generic nature of the codes. [AR 62.]

The ALJ found that Tracy "provided a reasonable explanation for the conflict" between her testimony and the occupational information provided in the DOT. [AR 20.] Specifically, the ALJ was persuaded by Tracy's erosion of the estimated number available in the economy "to reflect the claimant's standing and walking limitation" and that the identified "jobs would accommodate the claimant's standing and walking limitations because they could be performed with the use of a stool." [*Id.*] In accepting Tracy's testimony, the ALJ expressly credited her "experience in the industry." [*Id.*] The ALJ concluded that "[a] finding of 'not disabled' [wa]s therefore appropriate." [AR 21.]

**GOVERNING STANDARDS**

I.  **Standard of Review**

Under 42 U.S.C. § 405(g), the Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074.

II. **Finding of Disability**

For purposes of receiving social security benefits, a person is disabled if he cannot engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). The parties do not dispute that Myles has established a *prima facie* case of disability—*i.e.*, that Myles does not have sufficient RFC to perform his past work. Accordingly, the Commissioner bore the burden of establishing that Myles was not disabled because he could perform other substantial gainful work in the national economy. 20 C.F.R. § 404.1520.

**DISCUSSION**

Myles's sole challenge to the ALJ's decision is that the ALJ applied the wrong Grid standard. Basically, Myles claims that the ALJ was required to apply the sedentary work grid because Myles cannot perform *all* light work. That claim must be rejected because it conflicts with Ninth Circuit precedent and the Social Security Administration's own rulings.

At step 5 of the evaluation process, the Commissioner may satisfy her burden to show jobs existed for Myles in the national economy either (1) by obtaining testimony from a vocational expert or (2) by referencing the grids. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1115 (9th Cir. 2006). If the grids do not "*completely and accurately* represent a claimant's limitations," the ALJ is required to obtain and consider vocational expert testimony. *Tacket v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999) (emphasis in original); *see* 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(d) ("If an individual's specific profile is not listed within [the Medical-Vocational Guidelines], a conclusion of disabled or not disabled is not directed."); *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985). When the grids do not apply, they must be used only as a "reference point" or "overall structure." *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 578 (9th Cir. 1988).

If a plaintiff's exertional level falls in the middle of two rules that direct opposite conclusions under the grids, *i.e.*, "not disabled" under the higher rule but "disabled" under the lower rule, the ALJ must "call a vocational expert and hear testimony as to whether the claimant can perform *enough* light jobs in the national economy to warrant a finding of 'not disabled.'" *Id.* at 579-80 (emphasis in original); *see also* SSR 83-12, 1983 WL 31253 at *2-3 (explaining that it is advisable to seek vocational specialist assistance where "the rules would direct different conclusions, and the individual's exertional limitations are somewhere 'in the middle' in terms of the regulatory criteria for exertional ranges of work").

That is precisely what the ALJ did here. It is undisputed that Myles's RFC falls below the "light work" and above the "sedentary work" guidelines. The ALJ found as much, explaining that Myles could perform a "restricted range of light work." [AR 19.] A quick review of the applicable regulations yields the same result. [T]he full range of light work requires standing or walking for up to two-thirds of the

working day," and Myles can stand and/or walk for only four hours of an eight-hour workday.[3]  *Gallant v. Heckler*, 753 F.2d 1450, 1454 n.1 (9th Cir. 1984); 20 C.F.R. § 416.967(b); SSR 83-10, 1983 WL 31251 at *6; [AR 15.]. By contrast, sedentary work requires standing or walking for up to two hours of a full workday. 20 C.F.R. § 416.967(a); SSR 83-10. Myles's RFC places him right in the middle. Based on the ALJ's determinations that Myles was closely approaching advanced age and had a high school education, the "light work" and "sedentary work" grids likely direct opposite conclusions. [AR 19]; *compare* Grid Rules 202.13 & 202.14 (finding "not disabled" under "light work" grid) *with* Grid Rules 201.14 & 201.15 ("sedentary work" grid).[4] Accordingly, it was appropriate to consult the vocational expert.[5]

    Having consulted a vocational expert and asked a hypothetical question properly synthesizing all of the RFC limitations, the ALJ could reasonably conclude that Myles could perform "enough light jobs in the national economy to warrant a

---

[3] The Commissioner correctly observes that Myles does not contest the ALJ's determination of his RFC, or even that Myles is capable of a range of light work. [*See* Dkt. 20 at 7.]

[4] The Commissioner appears not to dispute Myles's claim that, if the "Sedentary Work" grid applied, the appropriate rule would be 201.14. [*See* Dkt. 20 at 7.] The ALJ expressly declined to determine whether Myles had transferable skills, because it was immaterial to the ALJ's finding that Myles was "not disabled," although the vocational expert said that she believed Myles did not. [AR 19, 60.] The Court assumes that 201.14 would be the applicable "sedentary work" guideline.

[5] The Court notes that the Social Security Administration does allow an ALJ to make a determination of "not disabled" without consulting a vocational expert when "[a]n exertional capacity … is only slightly reduced in terms of the regulatory criteria" such that it "indicate[s] a sufficient remaining occupational base." SSR 83-12, 1983 WL 31253 at *2-*3. The ALJ and this Court need not rely on that rule, given that the ALJ consulted a vocational expert. Nonetheless, applying this rule, the Court would find that the ALJ might have reasonably determined that because Myles satisfied all the other exertional requirements of light work, the difference between Myle's standing ability and the light work requirements was a "slight reduc[tion]" allowing for a conclusion that there was otherwise "a sufficient remaining occupational base."

finding of 'not disabled.'" *Desrosiers*, 846 F.2d at 579-80; *see Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); [AR 58-62]. Myles's RFC (which Myles does not contest) allowed him to perform light work, except that he could stand/walk only four instead of six hours a day. Tracy testified that even taking into account that limitation, a person in Myles's position could be a cashier or a bench assembler, so long as the position allowed him to use a stool—a consideration that was entirely permissible. *See Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (permitting a vocational expert to determine "whether particular applicants for disability benefits would be able to perform *subcategories* of jobs within the DOT" (emphasis added and citations omitted)). With that caveat, she concluded that approximately 8,000 local jobs and 650,000 national jobs existed. [AR 62.] Myles contests none of this here. From this evidence, the ALJ was entitled to conclude that "enough light jobs" exist that Myles was physically able to perform. *See, e.g.*, *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000) (finding 7,700 regional and 125,000 national jobs to be a sufficient pool to define claimant as "not disabled"); *see also Moncada*, 60 F.3d at 524 (finding that 2,300 local and 64,000 national jobs substantial evidence supporting denial of benefits).

*Cooper and Distasio*, which Myles claims control, do not demand a different outcome. Unlike in *Distasio*, the vocational expert here, in response to a question from the ALJ, directly explained that she was opining that a person with Myles's RFC could perform "occupations in the light level," not just jobs at the sedentary work level. *Compare Distasio*, 47 F.3d at 349 *with* [AR 15, 60-62.] The vocational expert did not contradict the ALJ's proposed RFC that Myles could perform light work jobs with certain limitations, whereas in *Distasio*, the vocational expert testified that only sedentary work would be appropriate. And *Cooper* is inapposite because there, the grid demanded a finding of "disabled" for the claimant regardless of whether the "light" or "sedentary" grid applied. *See Cooper*, 880 F.2d at 1156-57. But here, the two grids result in different outcomes, so the ALJ must (and did)

1  consider the vocational expert's testimony to determine whether appropriate jobs
2  exist.
3      Accordingly, the ALJ's decision to consult a vocational expert was proper, and
4  substantial evidence supported the Step 5 analysis.  The denial of benefits is
5  affirmed.

## CONCLUSION

7      For the foregoing reasons, **IT IS ORDERED** that Judgment be entered in favor
8  of the Commissioner.

10  **IT IS HEREBY ORDERED.**

12  DATED: July 21, 2015        _____
13                                                      GAIL J. STANDISH
                                                    UNITED STATES MAGISTRATE JUDGE